ANDERSON MOTOR SERVICE, INC. *v.* REVIEW BOARD OF THE
INDIANA EMPLOYMENT SECURITY DIVISION ET AL.

[No. 768A125. Filed May 21, 1969. No petition for rehearing filed.]

*Leland B. Cross, Jr., William R. Riggs, Ice Miller Donadio & Ryan,* all of Indianapolis, for appellant.

Attorney General of Indiana, for appellee Review Board.

LOWDERMILK, P. J.—This is an appeal by the Anderson Motor Service, Inc., appellant herein, from an adverse decision of the appellee Indiana Employment Security Division Review Board, granting unemployment benefits to the claimant, Jessie R. Ford, a former employee of appellant.

Ford had previously been dismissed from work by the appellant, which was accompanied by a letter of discharge. The principal reason given in the letter was extensive unexcused absenteeism.

The matter was eventually heard before a single member referee of the Review Board, who concluded that because of claimant's misconduct, he was not entitled to benefits. Thereafter, an appeal was taken to the full Review Board, which reversed the referee and entered its decision that ". . . claimant was discharged but not for misconduct in connection with his work" and granted claimant unemployment benefits.

It is well established that the decision of the Review Board is conclusive and binding as to all questions of fact and this

court may not disturb the decision unless reasonable men would be bound to reach the opposite conclusion from the evidence in the record. *Achenbach v. Review Bd. of Ind. Emp. Sec. Div.* (1962), 242 Ind. 655, 179 N. E. 2d 873; *Bootz Mfg. Co. v. Review Board of Ind. Emp. Sec. Div.*, (1968), 143 Ind. App. 17, 237 N. E. 2d 597; *Massengale v. Rev. Bd. of Ind. Emp. Sec. Div.* (1961), 132 Ind. App. 587, 178 N. E. 2d 557.

Thus, the question presented is whether or not the claimant, Ford, was discharged for misconduct in connection with his work and therefore ineligible for unemployment benefits within the meaning of Acts 1947, ch. 208, § 1501, p. 673, as amended, being § 52-1539, Burns' 1964 Replacement.

The undisputed evidence pertinent to the issue involved reveals that Ford had been employed with appellant from July 3, 1965, to June 26, 1967; that during the first 95 weeks of employment he had worked 31 full regular work weeks, leaving a total of 64 weeks that he was absent or worked short hours. All told, Ford was absent from work on 97 days and failed to work the entire day on 34 other occasions. The general manager testified that a high percentage of the absences were unexcused. He further stated that Ford received numerous oral warnings, letters of warning and a three-day disciplinary lay-off. Under appellant's "code of record", in order to have an excused absence an employee must notify the company at least one hour prior to starting time and have an acceptable excuse for such absence. The claimant, Ford, submitted evidence that during the above-mentioned period he was off three weeks with bruised ribs, two weeks with a broken thumb and four or five days with a cracked knee. The remaining 60-odd days of absences are not accounted for by Ford or anyone else.

Despite repeated warnings by both appellant and the union, claimant continued to be absent from work. As a result of the absenteeism claimant was given a "notice of discharge"

on February 6, 1967, but was allowed to continue to work pending a hearing of his case by the union.

Such hearing was held on March 14, 1967, with claimant present, together with representatives of appellant and Teamsters Union Local No. 135. After reviewing claimant's attendance record the parties agreed to reduce the discharge to a "final warning" and sent to claimant a letter incorporating the conditions of such final warning, which letter provided, in relevant part, as follows:

"You will be left on the job with full seniority, provided you do not miss any more work unless you have a definite substantiated reason and proper notification acceptable to the company.

. . . . .

"Govern yourself accordingly, as this is . . . your FINAL WARNING subsequent to being discharged. . . ."

The record discloses that in the next three month period Ford was absent from work 14 additional days, most of which were for medical reasons and were excused. Then, on June 24, 1967, Ford was again absent but gave no reason whatsoever. Two days later appellant sent him a letter of final discharge. Although Ford then filed a grievance pursuant to a collective bargaining agreement provision between appellant and the union, a joint committee of representatives of management and the union dismissed the grievance and upheld the discharge.

Acts 1947, ch. 208, § 1501, p. 673, as amended, being § 52-1539, Burns' 1964 Replacement, provides, in part:

"An individual shall be ineligible for waiting period or benefit rights: For the week in which he has . . . been discharged for misconduct in connection with his work, and for all weeks subsequent thereto . . ."

In defining the term "misconduct" as that term is used in the above cited Act, this court has said:

"It is conduct 'evincing such wilful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional disregard of the employer's interests or of the employee's duties and obligations to his employer.'" *A. Winer, Inc. v. Review Bd., Emp. Sec. Div.* (1950), 120 Ind. App. 638, 95 N. E. 2d 214.

An application of this definition of misconduct to repeated, unexcused absences despite continued warnings from the employer has been held to be sufficient to infer an intentional disregard of employer's interest.

In *Merkle v. Review Bd., Emp. Sec. Div.* (1950), 120 Ind. App. 108, 90 N. E. 2d 524, this court stated:

"It is our opinion that an employee who is a 'chronic absentee without notice and without permission', shows a wilful disregard of the employer's interest and if he is discharged by reason thereof he becomes ineligible for benefits...."

The *Merkle* case, *supra*, was recently reaffirmed in *Thompson v. Hygrade Food Prod. Corp.* (1965), 137 Ind. App. 591, 210 N. E. 2d 388, by the following language:

"It has been held that chronic absence without notice and without permission amounts to misconduct under the Act in question."

Although, as shown by Ford's attendance record, some of his absences were excusable for health reasons, there is an astonishing number of days in which Ford was absent or left work early, and no excuse whatsoever was given. It is quite obvious that appellant's final discharge of Ford was not only because Ford was absent without excuse on the particular day which resulted in the ultimate discharge, but

rather, the discharge was based upon Ford's many repeated absences over the past two years of employment for which no excuse was given despite appellant's repeated warnings.

". . . the evidence in a particular case may be such as to show, as frequently appears, acts or conduct encompassing several or all of the noted infractions evidencing 'misconduct' within the meaning of the unemployment compensation acts." *Tyler v. Review Bd., Ind. Emp. Sec. Div., et al.* (1956), 126 Ind. App. 223, 132 N. E. 2d 154.

The fact that the employer reduced the first discharge notice to a notice of final warning and permitted claimant to continue working does not mean that the employee's previous attendance record is automatically wiped clean of all previous misconduct.

As stated in *Chrysler Corp. v. Review Board, etc.* (1962), 134 Ind. App. 1, 185 N. E. 2d 25:

"Under these circumstances, a grant of unemployment benefits to the herein claimant would be not only in contravention of the announced purposes of the Act but would be also tantamount to a declaration against the right of an employer to establish and maintain fair and reasonable rules and regulations for the conduct of its business and the welfare of its employees."

There are naturally no general guidelines or "rules of thumb" that specify just when absenteeism becomes chronic or excessive absenteeism. Each case must be determined on the particular facts and circumstances introduced into evidence. A review of the record in the instant case leads this court to conclude that the conduct of the claimant Ford during his employment by the appellant was indeed excessive absenteeism and that reasonable men would be bound to differ with the Review Board's conclusions and ultimate decision.

This court is therefore of the opinion that the claimant Ford was discharged by reason of his own fault and conse-

quently is not entitled to unemployment benefits under the Act.

The award of the Review Board of the Indiana Employment Security Division is hereby reversed.

Costs v. Appellee.

Carson, Cooper and Sullivan, J.J., concur.

NOTE.—Reported in 247 N. E. 2d 541.